UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RUSSELL JAMES CARD, JR.,  :
   Plaintiff,           :
                                  :
v.                                :  Civil No. 3:18CV1060(AWT)
                                  :
NANCY A. BERRYHILL,               :
ACTING COMMISSIONER OF SOCIAL     :
SECURITY,                         :
   Defendant.           :

## ORDER REMANDING CASE

    For the reasons set forth below, the decision of the Commissioner is reversed and this case is remanded for additional proceedings consistent with this order.

    "A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to . . . the Social Security Act, 42 U.S.C. § 405(g) . . . is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

The plaintiff argues, inter alia, that the Administrative Law Judge ("ALJ") had a duty to request a medical source statement ("MSS") from treating physician Elizabeth Arbia because her "contemporaneous chart notes do not provide any meaningful indication as to what she believes Mr. Card can or cannot do on a function-by-function basis[, nor] . . . any meaningful indication of how many days per month Mr. Card would be expected to be out of work either due to his conditions or for the treatment of them, a fact of great significance given the vocational witness's testimony that a worker's absence one day per month would result in no available jobs (R. 55). Pl.'s Mem. to Reverse ("ECF No. 20-2") at 4. The plaintiff also argues that the ALJ's failure to specifically consider the "evaluation performed by a physical therapist . . . on December 18, 2015 (R. at 1082-1086)" noting that the plaintiff "would require some type of job retraining" and was "probably able to perform sedentary job part time" is a legal error that could have affected the disability determination. Pl.'s Mem. to Reverse ("ECF No. 20-2") at 2.

The defendant argues, inter alia, that the ALJ's Residual Functional Capacity ("RFC") determination was supported by substantial evidence because it included consideration of the opinions of nonexamining state agency medical consultants Drs. Golkar, Sandell and Chopra. See Def.'s Mem. to Affirm ("ECF No.

24-1") at 7-11.  As to the physical therapist's medical source statement, the defendant argues that the physical therapist's name is illegible; that the form was "completed by an unnamed physical therapist, who was not an acceptable medical source"; that the "evaluation took place just four months after Plaintiff left the hospital, and while he was undergoing physical therapy and reportedly using a cane"; and that the report did not provide any rationale supporting the limitations assessed." See Def.'s Mem. to Affirm ("ECF No. 24-1") at 14.

The court concludes that, at minimum, the ALJ had a duty to communicate in a reviewable way that he considered and weighed the physical therapist's assessment in relation to all of the evidence, which includes Dr. Arbia's records and MSS referral, given that the physical therapist's MSS was the only apparent one prepared by an examining medical source.  This, standing alone, warrants remand.

**LEGAL STANDARD**

> In general, "the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding, even if the claimant is represented by counsel." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (citation omitted) (internal quotation marks omitted). "Social Security Administration rules provide that '[m]edical reports should include . . . [a] statement about what [the claimant] can still do despite [his] impairment(s) ... Although [the SSA] will request a medical source statement about what [the claimant] can still do despite [his] impairment(s), the lack of the medical source statement will not make the report incomplete.'" *Tankisi v. Commissioner of Social Security*, 521 F. App'x 29, 33 (2d Cir.

3

2013)[1] (summary order) (quoting 20 C.F.R. §§ 404.1513(b)(6)[2], 416.913(b)(6)). "[T]he plain text of the regulation does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity . . . . The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions." *Id.* (quoting 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)) (emphasis in original). The regulations state that the reports *should* include a statement about the claimant's residual capacity, and that the lack of a medical source statement is not necessarily fatal to the record. *See id.* Accordingly, it is not "per se error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician." *Sanchez v. Colvin*, 2015 WL 736102, at *5 (S.D.N.Y. 2015).

Even without a medical source statement, an "ALJ's conclusions would not be defective if he requested opinions from medical sources and the medical sources refused." *Tankisi*, 521 F. App'x at 33-34. Further, the failure of the ALJ to procure formal opinions about a claimant's residual functional capacity does not, by itself, require remand where the medical record is "quite extensive[,] ... voluminous[,] . . . [and] adequate to permit an informed finding by the ALJ." *Tankisi*, 521 F. App'x at 34; *see also Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information." (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)). "Remand is not always required when an ALJ

---

[1] See <u>Holt v. Colvin</u>, No. 3:16-CV-01971 (VLB), 2018 WL 1293095, at *6:

> The Court recognizes *Tankisi* is a summary order that does not have precedential effect. There does not exist any binding decisions from the Second Circuit on this issue, but numerous lower courts and the Second Circuit summary orders have applied the reasoning in *Tankisi*. *See, e.g., Guillen v. Berryhill*, 697 Fed.Appx. 107, 108 (2d Cir. 2017); *Monroe v. Comm'r of Soc. Sec.*, 676 Fed.Appx. 5, 8 (2d Cir. 2017); *DeLeon v. Colvin*, No. 15-CV-01106 (JCH), 2016 WL 3211419, at *4 (D. Conn. June 6, 2016); *Jacovino v. Berryhill*, No. 16 Civ. 3187 (LTS) (HBP), slip op. at 19-21 (S.D.N.Y. Dec. 22, 2017); *Wolf v. Berryhill*, No. 1:16-cv-00327-MAT, slip op. at 2-3 (W.D.N.Y. Nov. 8, 2017); *Luciano*, slip op. at 6-7.

To date there is no binding decision from the Second Circuit on this issue.

[2] This provision was effective between September 3, 2013 to March 26, 2017. The plaintiff filed his application November 6, 2015. Therefore, this provision applies to this case.

> fails in his duty to request opinions particularly where ... the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi*, 521 F. App'x at 34. That is particularly true where the record includes assessments of the claimant's limitations from a treating physician. *Id.*
>
> Remand is required where an ALJ's residual functional capacity decision is "wholly unsupported by any medical evidence." *Jermyn v. Colvin*, 2015 WL 1298997, at *19 (E.D.N.Y Mar. 23, 2015). Remand is also necessary where "the medical records obtained by the ALJ do not shed any light on the [claimant's RFC], and [where] the consulting doctors did not personally evaluate" the claimant. *Guillen v. Berryhill*, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order). The record is insufficient when "[t]he medical records discuss [the claimant's] illnesses and suggest treatment for them, but offer no insight into how [the] impairments affect or do not affect [the claimant's] ability to work, or [his] ability to undertake the activities of daily life." *Id.* at 109.

<u>Martinez v. Berryhill</u>, No. 3:17-CV-843 (SRU), 2019 WL 1199393, at *10–11 (D. Conn. March 14, 2019).

Also, the Social Security Administration makes clear that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c)[3]. Pursuant to 20 C.F.R. 404.1512(e)[4], the ALJ generally "will not request a consultative examination" "nor evaluate this evidence" "until" the ALJ has made "every reasonable effort to obtain evidence from" the plaintiff's "own medical sources".

> Opinions from . . . medical sources, who are not technically deemed "acceptable medical sources" under our rules, are

---

[3] This provision is for claims filed before March 27, 2017. The plaintiff filed his application November 6, 2015. Therefore, this provision applies to this case.

[4] This provision was effective between April 20, 2015 to March 26, 2017. The plaintiff filed his application November 6, 2015. Therefore, this provision applies to this case.

5

important and should be evaluated on key issues such as
impairment severity and functional effects, along with the
other relevant evidence in the file.

Social Security Ruling 06-03p (Rescinded effective March 27, 2017, i.e. after November 6, 2015, when the plaintiff filed his claim for disability benefits.); Kellams v. Berryhill, 696 Fed. Appx. 909, 918 (10th Cir. 2017) (remanding for failure to evaluate a physical therapist's functional capacity evaluation on key issues such as impairment severity and functional effects even though the therapist was not considered an acceptable medical source pursuant to 20 C.F.R. § 404.1502(a) (citing Bowman v. Astrue, 511 F.3d 1270, 1274–75 (10th Cir. 2008) (quoting Social Security Ruling 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006))).

> [W]e will consider [opinions from medical sources who are not acceptable medical sources] using the same factors as listed in paragraph (c)(1) through (c)(6) . . . [,] and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source.

20 C.F.R. § 404.1527(f)(1).

> The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

Social Security Ruling 06-03p.

> The adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

20 C.F.R. § 404.1527(f)(2).

**DISCUSSION**

The ALJ's Decision states:

> Regarding the claimant's functioning related to his aforementioned impairments, despite his complaints and alleged functional limitations, the claimant has still acknowledged doing some meal preparation, housework, shopping, driving, using a computer and reading and the ability to handle money (See: Exhibit 3E). Moreover**, with respect to the specific opinion evidence concerning the claimant's physical functioning, a nonexamining state agency physician in an assessment dated May 4, 2016, maintained that the claimant was capable** of lifting and carrying 5-7 pounds frequently and 10 pounds occasionally, sitting for about 6 hours in an 8 hour work day, standing and/or walking for 4 hours in an 8 hour work day and pushing/pulling within those weight limits, as well as having the nonexertional limitations of inability to climb ropes/ladders/scaffolds, of being limited to occasional climbing of stairs/ramps, stooping, kneeling, crouching and crawling and of being limited to frequent balancing (Exhibit 4A). In view of the fact that said assessment is generally consistent with and supported by the just discussed record, and is **not contradicted by a competent, detailed and well-supported assessment from a treating and/or examining source**, it would be entitled to significant probative weight with respect thereto (20 CFR 404.1527). To the extent that another nonexamining state agency physician in an assessment dated February 1, 2016, opined that the claimant had greater lifting/carrying and pushing/pulling capabilities (Exhibit 2A), when considering the just discussed record and giving the claimant the benefit of the doubt, the undersigned gives said assessment less probative weight (20 CFR 404.1527).

R. at 27-28 (emphasis added).

Here, the ALJ only refers to the opinions of nonexamining state agency physicians and notes that these assessments are "not contradicted by a competent, detailed and well-supported assessment from a treating and/or examining source"; yet, there is no indication that the ALJ attempted to contact a treating or examining source for purposes of determining the RFC.

The record does shed light on the plaintiff's RFC. It reveals that the plaintiff asked Dr. Arbia to fill out "Security/disability paperwork". R. at 929, 930, 932. Dr. Arbia appears to have referred this task to a physical therapist. See R. at 933, 1082. The physical therapist's MSS identifies Dr. Arbia as the treating physician and describes the reason for referral as "Disability Eval". R. at 1082. This medical source statement describes the plaintiff's limitations and opines that the plaintiff would need job retraining and was possibly able to perform sedentary, part-time work; yet the Decision fails to mention the physical therapist's assessment, even though the parties have identified it as the only existing medical source statement from an examining medical source. If the ALJ had contacted Dr. Arbia, she might have been able to provide rationale for the outcome of the physical therapist's assessment, might have been able to provide her own assessment, might have been able to clarify the relationship between the

8

plaintiff's neck growth, pancreatitis and back pain and might have been able to address what appear to be inconsistencies in the record.  This information may have led to a different RFC and disability determination.

## CONCLUSION

For the reasons set forth above, the ALJ's Decision must be remanded because it fails to apply the correct legal standard. On remand the ALJ should analyze the physical therapist's assessment, apply the factors found at 20 C.F.R. § 404.1527 (c)(1) through (c)(6), and weigh the assessment in relation to all of the available evidence.  The ALJ should develop the record by seeking any necessary clarifications or opinions from Dr. Arbia.  The ALJ also should address the parties' remaining arguments, re-evaluate the Decision and write it such that the plaintiff and any subsequent reviewer can follow his reasoning.

For the reasons set forth above, the plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 20) is hereby GRANTED, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 24) is hereby DENIED. This case is hereby REMANDED to the Commissioner for proceedings consistent with this order.

The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any

subsequent social security appeal is to be assigned to the undersigned.

The Clerk shall close this case.

It is so ordered.

Dated this 16th day of September 2019, at Hartford, Connecticut.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge